1
2
3                                                          O
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   FILOMENA FIGUEROA,                )  Case No. CV 12-06742-OP
12                      Plaintiff,     )
                                       )
13          v.                         )  MEMORANDUM OPINION AND
                                       )  ORDER
14   CAROLYN W. COLVIN,[1]             )
     Acting Commissioner of Social     )
15   Security,                         )
                                       )
16                      Defendant.     )
     _____   )

17          The Court[2] now rules as follows with respect to the disputed issues listed in
18   the Joint Stipulation ("JS").[3]
19
20   _____
21          [1]  The Court substitutes Carolyn Colvin, Acting Commissioner of Social
22   Security, as the defendant in this action pursuant to Rule 25(d) of the Federal
     Rules  Civil Procedure.
23
24          [2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
     the United States Magistrate Judge in the current action.  (ECF Nos. 11, 12.)
25
26          [3]  As the Court stated in its Case Management Order, the decision in this
     case is made on the basis of the pleadings, the Administrative Record, and the
27   Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal
     Rules of Civil Procedure, the Court has determined which party is entitled to
28   judgment under the standards set forth in 42 U.S.C. § 405(g).  (ECF No. 9 at 3.)

                                      1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the Administrative Law Judge ("ALJ") fully developed the record;

(2)     Whether the ALJ properly assessed Plaintiff's credibility;

(3)     Whether the ALJ properly considered lay witness testimony;

(4)     Whether the ALJ properly considered Plaintiff's combined impairments in making a Residual Functional Capacity ("RFC") assessment; and

(5)     Whether the ALJ erred in relying on the Vocational Expert's ("VE") testimony.

(JS at 3, 31.)[4]

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

---

[4]  In the listing of claims in the Joint Stipulation, both Claims Three and Five indicate a claim regarding the consideration of lay witness evidence. (JS at 3.)  However, it is clear from the body of the document that Claim Three pertains to lay witness evidence while Claim Five relates to VE testimony.  (Id. at 22-27, 31-34.)

1   evidence is "such relevant evidence as a reasonable mind might accept as adequate
2   to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted).  The
3   Court must review the record as a whole and consider adverse as well as
4   supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).
5   Where evidence is susceptible of more than one rational interpretation, the
6   Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,
7   1452 (9th Cir. 1984).

**III.**

**DISCUSSION**

**A.    The ALJ's Findings.**

        The ALJ found that Plaintiff has the severe impairments of grade 1
spondylolisthesis, degenerative disc disease, mild degenerative changes affecting
the lumbar spine, and status post left knee arthroscopic repair.  (Administrative
Record ("AR") at 30.)  The ALJ found that Plaintiff had the residual functional
capacity ("RFC") to perform light work with the following limitations: no
climbing ladders, ropes, and scaffolds; no stooping or crouching; and no
concentrated exposure to hazardous machinery, unprotected heights, and other
high risk, hazardous or unsafe conditions.  (Id. at 30-31.)  Relying on the
testimony of a vocational expert, the ALJ concluded that Plaintiff was not capable
of performing her past relevant work but could perform alternative work as a
sorter, inspector, and labeler.  (Id. at 35-36.)

**B.    The ALJ Did Not Fail to Fully Develop the Record.**

        Plaintiff contends that the ALJ failed to properly develop the record and
appears to argue that the ALJ should have subpoenaed additional records from
Long Beach Memorial Medical Center regarding the treatment of Plaintiff's
cardiac and gastric conditions.  (JS at 3-6.)

        Under the Commissioner's regulations, both the disability benefits claimant
and the Social Security Administration bear a regulatory responsibility for

3

1   developing the evidentiary record.  The claimant must produce medical evidence
2   showing that the claimant has an impairment, and how severe that impairment is
3   during the time the claimant claims to be disabled.  See 20 C.F.R. §§ 404.1512(c)
4   (applicable to claims for disability benefits), 416.912(c) (applicable to claims for
5   SSI benefits).  In addition, the SSA must make every reasonable effort to help the
6   claimant get medical reports from the claimant's medical sources when the
7   claimant gives permission to request the reports.  See 20 C.F.R. §§ 404.1512(d),
8   416.912(d).

9        The ALJ has an independent duty to fully and fairly develop a record in
10  order to make a fair determination as to disability, even where the claimant is
11  represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.
12  2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing
13  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Crane v. Shalala, 76 F.3d
14  251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.
15  1983)).  Ambiguous evidence, or the ALJ's own finding that the record is
16  inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty
17  to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing
18  Smolen, 80 F.3d at 1288).  That duty is heightened when the claimant is
19  unrepresented or is mentally ill and thus unable to protect his or her own interests.
20  Celaya, 332 F.3d at 1183; see also Tonapetyan, 242 F.3d at 1150; Crane, 76 F.3d
21  at 255.  However, it is the plaintiff's burden to prove disability.  Bayliss v.
22  Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) (quoting Meanel v. Apfel, 172
23  F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that
24  she is disabled")).

25        When the duty to develop the record is triggered, the ALJ can develop the
26  record by (1) making a reasonable attempt to obtain medical evidence from the
27  claimant's treating sources; (2) ordering a consultative examination when the
28  medical evidence is incomplete or unclear and undermines the ability to resolve

4

1   the disability issue; (3) subpoenaing or submitting questions to the claimant's

2   physicians; (4) continuing the hearing; or (5) keeping the record open for more

3   supplementation.  *Tonapetyan*, 242 F.3d at 1150; 20 C.F.R. § 416.917.

4        Plaintiff identifies five instances in the ALJ's opinion where the ALJ

5   concluded that the record did not support Plaintiff's contentions.  Plaintiff argues

6   that these findings by the ALJ amount to a finding that the record was inadequate.

7   (JS at 5-6.)  The record supports Plaintiff's assertion that the ALJ found that the

8   record did not support Plaintiff's contentions.  (AR at 31-34.)  However, the ALJ's

9   finding that the record does not contain evidence to support Plaintiff's contentions

10  is not equivalent to a finding that the record needs further development.  Rather,

11  the lack of evidence is proof that Plaintiff's contentions lack merit.  Were the

12  Court to find to the contrary, an ALJ would fail to fulfill his duty to develop the

13  record every time a claimant's allegations are unsupported by the record.  Of

14  course, an ALJ has no duty to find evidence where no such evidence exists.

15       This is particularly true where, as here, Plaintiff fails to identify any

16  additional supportive evidence that the ALJ should have obtained.  In fact,

17  Plaintiff failed to satisfy her initial burden of producing medical evidence showing

18  that she has a material cardiac or gastric condition.  See 20 C.F.R. §§ 404.1512(c),

19  416.912(c).  The only evidence produced by Plaintiff regarding her alleged cardiac

20  condition were discharge instructions indicating that she was treated for some

21  unidentified cardiac condition.  (AR at 527-29.)  Plaintiff has not provided any

22  proof that follow-up care was required or that she continued to suffer any

23  impairments as a result of this alleged cardiac condition.  Similarly, the record

24  contains an After Visit Summary regarding Plaintiff's treatment for a gastric

25  condition.  However, that summary indicates that the condition was acute and that

26  she need not return for followup for two months.  (Id. at 536.)  These minimal

27  records do not support a finding that Plaintiff exhibited a disabling cardiac or

28  gastric condition and were insufficient to put the ALJ on notice that the record was

1    insufficient to adjudicate Plaintiff's claims.

2           Plaintiff simply has failed to prove that the record was ambiguous or that

3    the ALJ found that the record was inadequate to allow for proper evaluation of the

4    evidence.  Accordingly, Plaintiff has failed to establish that the ALJ's duty to

5    develop the record was triggered.  Thus, there was no error.

6    **C.      The ALJ's Consideration of Plaintiff's Credibility.**

7           Plaintiff contends that the ALJ improperly rejected her subjective

8    complaints of impairment.  (JS at 9-17, 20-22.)  The Court does not agree.

9           In his decision, the ALJ incorporated by reference the credibility

10   determination contained in the previous ALJ's decision denying benefits.[5]  (AR at

11   31.)  In that prior opinion, the ALJ rejected Plaintiff's credibility as follows:

12                 The claimant testified that she has back pain, left knee pain, joint

13          pain, her foot gives way.  Medications make her sleepy.  The claimant

14          only takes nonprescription ibuprofen for pain but said she also takes

15          medications she obtains in Mexico, which she reported provides one

16          month of relief.  The claimant further testified that she can only sit less

17          than 30 minutes, lift less than 10 pounds, stand only a little bit, she

18          cannot bend, she spends the day sitting and lying down, cooks if she can

19          take her time and rest in between, and back support improves her

20          comfort but could not do any work 8 hours a day.

21                 The claimant still drives, however, she can perform personal

22          grooming and hygiene, she can go to her medical appointments, she can

23

24   _____

25          [5]  On October 26, 2007, an ALJ denied Plaintiff's application for benefits in
     a written decision.  (AR at 52-59.)  On April 6, 2009, the Appeals Council vacated

26   the ALJ decision and remanded the action for the resolution of the Step Five
     analysis, specifically ordering further consideration of the vocational assessments

27   as compared to Plaintiff's RFC.  (Id. at 454-55.)  On February 17, 2010, the ALJ

28   issued the instant written decision denying Plaintiff's application for benefits.

1    cook and do laundry, and she can go to the grocery store and post office
2    without assistance.  While the claimant does not have to be utterly
3    incapacitated in order to be found disabled, her activities of daily living,
4    although somewhat limited, nevertheless are not consistent with
5    allegations of disabling pain.

6         August, September and October 2006 physical therapy notes
7    indicate that, more than a month after the claimant's surgery, although
8    massage and lying on her left side alleviated pain, her pain nonetheless
9    was improving, her gait was normal, and she was weaning herself off the
10   use of crutches to ambulate.  Further, the August 29, 2006 physical
11   therapy note reported a generally normal exam, aside from some low
12   back pain produced by an otherwise negative straight leg raising test –
13   again, this was only less than 2 months after knee surgery.  This
14   evidence does not support the claimant's allegations of disabling pain.

15        The record indicates that the claimant declined cortisone
16   injections, which indicates that her pain is not as severe as alleged.  The
17   claimant's doctor recommends limiting the back support and doing
18   strengthening exercises, contrary to what she is doing, which indicates
19   some treatment noncompliance that tends to lessen her credibility.

20        While the claimant['s] complaint of left sided radiculopathy, and
21   treating workers' compensation orthopedic surgeon Dr. Thomas J.
22   Grogan diagnosed lumbar spine radiculopathy, there was no evidence of
23   radiculopathy on testing in January and August 2005 electromyograms.
24   Further, no functional problems were noted during the face-to-face
25   application interviews.  This evidence also tends to lessen the credibility
26   of the claimant's allegations of disabling pain.

27        The claimant has a pristine earnings record, which shows a
28   motivation to work that actually tends to enhance her credibility.  After

considering the evidence now of record, however, the Administrative
Law Judge finds . . . that the claimant's underlying medically
determinable impairments could reasonably be expected to produce
some of the alleged symptoms, but that the statements concerning the
intensity, persistence and limiting effects of these symptoms are not
entirely credible.

(Id. at 54-55 (citation omitted).)

Once a claimant has presented medical evidence of an underlying
impairment that could reasonably be expected to cause the symptoms alleged, the
ALJ may only discredit the claimant's testimony regarding subjective pain by
providing specific, clear, and convincing reasons for doing so.  Lingenfelter v.
Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  An ALJ's credibility finding
must be properly supported by the record and sufficiently specific to ensure a
reviewing court that the ALJ did not arbitrarily reject a claimant's subjective
testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).

An ALJ may properly consider "testimony from physicians . . . concerning
the nature, severity, and effect of the symptoms of which [claimant] complains,"
and may properly rely on inconsistencies between claimant's testimony and
claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d
954, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he
nature, location, onset, duration, frequency, radiation, and intensity" of any pain or
other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage,
effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than
medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities";
"unexplained, or inadequately explained, failure to seek treatment or follow a
prescribed course of treatment"; and "ordinary techniques of credibility
evaluation," in assessing the credibility of the allegedly disabling subjective
symptoms.  Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20

1  C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

2  600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on

3  conflict between claimant's testimony of subjective complaints and objective

4  medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.

5  1998) (ALJ may properly rely on weak objective support, lack of treatment, daily

6  activities inconsistent with total disability, and helpful medication); Johnson v.

7  Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact

8  that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d

9  748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and

10  the lack of side effects from prescribed medication).

11  **1.    The ALJ's Incorporation of the Prior ALJ Decision.**

12      Plaintiff does not challenge the credibility findings made in the prior ALJ

13  decision.  Rather, Plaintiff argues that the prior decision is not material to the

14  current analysis because the Appeals Council vacated that prior decision when it

15  remanded the action to the ALJ for a new opinion.  (JS at 20-22.)  In drafting the

16  new opinion on remand, the ALJ incorporated portions of the previous analysis so

17  as to avoid having to redraft an identical analysis in the new opinion.  Nothing

18  about the incorporation of the prior analysis is inconsistent with the Appeals

19  Council's order for a new opinion.  See Pitts v. Astrue, No. EDCV 11-230-OP,

20  2011 WL 5520319, *5 (C.D. Cal. Nov. 10, 2011) (ALJ's decision on remand

21  incorporated portions of prior decision).  Importantly, as detailed below, the

22  incorporated portion of the prior ALJ opinion provided sufficient reasoning for

23  rejecting Plaintiff's credibility.

24      First, the ALJ rejected Plaintiff's credibility because her reported activities

25  of daily living were inconsistent with her alleged disability.  (AR at 55.)  Daily

26  activities may be grounds for an adverse credibility finding "if a claimant is able to

27  spend a substantial part of his day engaged in pursuits involving the performance

28  of physical functions that are transferable to a work setting."  Fair v. Bowen, 885

9

1  F.2d 597, 603 (9th Cir. 1989); <u>see also</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th

2  Cir. 2005) (adverse credibility finding based on daily activities may be proper "if a

3  claimant engaged in numerous daily activities involving skills that could be

4  transferred to the workplace").  Plaintiff admitted during the hearing and through

5  forms related to her disability application that she could drive, cook, bathe, run

6  light errands, attend medical appointments, socialize, and complete light

7  housework.  (AR at 132, 163-64, 166, 547, 557.)  The ability to maintain such a

8  high level of daily activities is inconsistent with Plaintiff's allegations of total

9  disability.  As a result, this was a clear and convincing reason for rejecting

10  Plaintiff's credibility.  <u>See</u> <u>Thomas</u>, 278 F.3d at 958-59 (inconsistency between

11  claimant's testimony and claimant's conduct supported rejection of the claimant's

12  credibility); <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999)

13  (inconsistencies between claimant's testimony and actions cited as clear and

14  convincing reason for rejecting the claimant's testimony).

15       Next, the ALJ discounted Plaintiff's allegations that her knee impairment

16  contributes to her total disability.  (AR at 55.)  While Plaintiff continues to allege

17  disability in part due to a left knee impairment (<u>id.</u> at 496), the medical record

18  shows a successful recovery from knee surgery.  (<u>Id.</u> at 377, 389, 396, 401.)  Of

19  course, an ALJ "may not reject a claimant's subjective complaints based *solely* on

20  a lack of objective medical evidence to fully corroborate the alleged severity of

21  pain." <u>Bunnell</u>, 947 F.2d at 345 (emphasis added).  However, such a factor

22  remains relevant.  <u>Burch</u>, 400 F.3d at 680-81 (ALJ may properly rely on

23  inconsistency between claimant's subjective complaints and objective medical

24  findings); <u>Morgan</u>, 169 F.3d at 600 (ALJ may properly rely on conflict between

25  claimant's testimony of subjective complaints and objective medical evidence in

26  the record).  Here, the ALJ did not rely solely on the lack of medical evidence

27  supporting Plaintiff's complaints of an ongoing knee impairment in rejecting her

28  credibility.  Accordingly, this too was a clear and convincing reason for rejecting

1    Plaintiff's credibility.

2        The ALJ also discounted Plaintiff's subjective complaints of impairment for

3    the clear and convincing reason that Plaintiff did not fully comply with treatment

4    recommendations. (AR at 55.) A relevant factor in determining a claimant's

5    credibility is an "'unexplained, or inadequately explained, failure to seek treatment

6    or follow a prescribed course of treatment.'" Bunnell, 947 F.2d at 346 (quoting

7    Fair, 885 F.2d at 603. A treatment note from February 2005 indicates that Plaintiff

8    refused cortisone injections for her back and knee pain due to a negative

9    experience in the past. (AR at 178, 426.) The same treatment note recommended

10   that Plaintiff continue her home exercise program, resume as many regular

11   activities as possible, and reduce the use of her lumbosacral mechanical support to

12   avoid weakening of her core muscles. (Id. at 178, 426.) Nevertheless, as is

13   apparent from Plaintiff's reports of limited physical activity, Plaintiff has not been

14   compliant with these recommendations for improving her muscle strength and

15   endurance.

16       The ALJ further noted that although Dr. Grogan diagnosed lumbar spine

17   radiculopathy, such a diagnosis was not supported by the objective medical

18   evidence. (Id. at 55.) Again, the lack of objective medical evidence is a relevant

19   factor in assessing a claimant's subjective complaints, but cannot act as the sole

20   basis for rejecting the subjective complaints of impairment. Bunnell, 947 F.3d at

21   345 (ALJ may not reject claimant's credibility based solely on a lack of objective

22   medical evidence); Burch, 400 F.3d at 680-81 (ALJ may properly rely on

23   inconsistency between claimant's subjective complaints and objective medical

24   findings); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between

25   claimant's testimony of subjective complaints and objective medical evidence in

26   the record). Here, Plaintiff's workers' compensation physicians noted a diagnosis

27   of radiculopathy multiple times during Plaintiff's evaluations and treatment. (AR

28   at 242, 244, 270, 272, 324, 435.) However, there is not a single objective finding

                                          11

1    in the record to support the diagnosis of radiculopathy.  A January 2004 x-ray of
2    Plaintiff's lumbar spine resulted in only a question of an L5 spondylolysis on the
3    lateral view.  (Id. at 211.)  A March 2004 MRI of the lumbar spine was
4    unremarkable.  (Id. at 206.)  A January 2005 electromyogram resulted in normal
5    findings.  (Id. at 184.)  A February 2005 x-ray of the lumbosacral spine was
6    negative.  (Id. at 236.)  A May 2005 MRI indicated spondylolisthesis, disc
7    desiccation and bulge, mild spinal canal narrowing, and mild bilateral
8    neuroforaminal encroachment, but did not indicate a finding of radiculopathy.  (Id.
9    at 258-59.)  Finally, an August 2005 physician report notes that an
10   electrodiagnostic study had not revealed any evidence of lumbar radiculopathy or
11   peripheral neuropathy.  (Id. at 343.)  The lack of objective evidence confirming
12   radiculopathy is yet another clear and convincing reason for rejecting Plaintiff's
13   subjective complaints of impairment.

14          **2.      The ALJ's New Credibility Analysis.**

15          Significantly, the ALJ updated his credibility findings in the current written
16   decision, citing the same factors discussed above in addition to the following
17   factors:  (1) there is no evidence in the record to support Plaintiff's alleged
18   disabling cardiac, gastric, and psychiatric conditions (id. at 31, 32); (2) there is no
19   documentation of complaints of stress or headache to support Plaintiff's
20   complaints of such impairments (id. at 32); (3) Plaintiff's conservative regimen of
21   pain medications and sporadic treatment records undermines her complaints of
22   constant debilitating pain (id. at 32-33); and (4) there is no objective medical
23   evidence of an impairment related to Plaintiff's wrist, hand, or neck that could
24   reasonably produce the subjective symptoms alleged by Plaintiff (id. at 33).  As
25   discussed below, these factors provide additional clear and convincing reasons for
26   rejecting Plaintiff's credibility.

27          As discussed above (see Discussion supra § III.B), the evidence did not
28   support a finding that Plaintiff suffered from a disabling cardiac or gastric

1   condition.  Neither does the record support a disabling psychiatric condition, as

2   the record only makes passing references to depression and the administration of

3   Prozac.  (Id. at 135, 138, 195, 336, 355, 356-57.)  Similarly, there are no records

4   suggesting that Plaintiff suffered from an ongoing problem with stress or

5   headaches.  On August 4, 2005, Plaintiff made a subjective complaint of "frequent

6   pain-related headaches."  (Id. at 323.)  However, less than five months prior,

7   Plaintiff reported that she did not suffer from frequent headaches.  (Id. at 336.)

8   Plaintiff also mentioned experiencing stress only in passing.  (Id. at 138.)  In

9   addition, despite Plaintiff's complaints of hand, wrist, and neck impairments, there

10   is no objective evidence to support any type of limitations in this regard.  In fact,

11   January 2007 x-rays of Plaintiff's cervical spine, hand, and wrist were normal.

12   (Id. at 361-62.)  Again, the lack of objective medical evidence to support

13   Plaintiff's complaints of impairment was a clear and convincing reason to reject

14   her credibility.  Burch, 400 F.3d at 680-81 (ALJ may properly rely on

15   inconsistency between claimant's subjective complaints and objective medical

16   findings); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between

17   claimant's testimony of subjective complaints and objective medical evidence in

18   the record).

19        Finally, to the extent that Plaintiff has been treated for any physical

20   conditions, she has maintained a conservative medication history.  Plaintiff has

21   obtained relief mostly through the use of ibuprofen and Flexeril, and was only

22   prescribed narcotic pain medication immediately following her knee surgery.  (Id.

23   at 177, 182, 186, 193, 243, 305, 356, 358, 359, 361, 363, 364, 367, 369, 370-71,

24   373, 376, 378, 380, 382, 383, 386-87, 389-90, 392, 394, 396, 399, 402, 404, 415,

25   417, 418, 424-26, 529.)  This too was a clear and convincing reason for rejecting

26   Plaintiff's credibility.  Johnson, 60 F.3d at 1434 (ALJ may properly rely on the

27   fact that only conservative treatment had been prescribed).

28        Ultimately, the lack of objective medical evidence supporting Plaintiff's

13

1  alleged impairments, her conservative treatment, her noncompliance with

2  suggested treatment, and her significant activities of daily living amounted to clear

3  and convincing reasons for rejecting her credibility.  Burch, 400 F.3d at 680-81

4  (ALJ may properly rely on inconsistency between claimant's subjective

5  complaints and objective medical findings); Morgan, 169 F.3d at 600 (ALJ may

6  properly rely on conflict between claimant's testimony of subjective complaints

7  and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (ALJ may

8  properly rely on weak objective support, lack of treatment, daily activities

9  inconsistent with total disability, and helpful medication).

10        Based on the foregoing, the Court finds the ALJ's credibility finding was

11  supported by substantial evidence and was sufficiently specific to permit the Court

12  to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

13  testimony.  Thus, there was no error.

14  **D.      The ALJ Properly Considered the Lay Witness Testimony.**

15        Plaintiff claims that the ALJ failed to properly consider the testimony of her

16  husband, Jose Figueroa.  (JS at 22-23, 25-27.)  The Court does not agree.

17        Mr. Figueroa testified that Plaintiff is "very injured."  (AR at 581.)

18  Specifically, Mr. Figueroa testified that Plaintiff suffers from numbness in her

19  hands, pain in her neck and back, swelling in her hands and arms, and difficulty

20  sleeping.  (Id. at 581-82.)  According to Mr. Figueroa, Plaintiff cannot sit long and

21  has trouble walking.  (Id. at 583.)  Mr. Figueroa has to assist Plaintiff with the

22  shopping.  (Id..)  The ALJ rejected Mr. Figueroa's testimony, finding:

23              At the hearing, the claimant and her husband alleged an inability to

24              perform most daily activities with the husband having to assume all

25              of the household chores (hearing testimony).  However, the objective

26              medical record does not show findings, which would support the

27              degree of limitation alleged.

28  (Id. at 33.)

14

1    Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to
2    medical evidence, the Commissioner "may also use evidence from other sources to
3    show the severity of [an individual's] impairment(s) and how it affects [her]
4    ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by
5    friends and family members in a position to observe a claimant's symptoms and
6    daily activities have routinely been treated as competent evidence." Sprague v.
7    Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). If the ALJ chooses to reject such
8    evidence from "other sources," he may not do so without comment. Nguyen v.
9    Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must provide "reasons that
10   are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.
11   1993). One of the reasons deemed to be "germane" to a particular witness
12   includes that the witness's testimony is contradicted by the medical evidence of
13   record. See Bayliss, 427 F. 3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th
14   Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it
15   conflicts with medical evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d
16   1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that
17   conflicted with the available medical evidence.").

18        Here, the ALJ acknowledged Mr. Figueroa's testimony and rejected it on
19   the basis of reasons that were germane to the witness. The Court does not
20   consider the persuasiveness of the ALJ's reasons for rejecting Mr. Figueroa's
21   testimony. Thus, the ALJ fulfilled his duty to consider the evidence and provided
22   sufficient reason for rejecting the third party evidence of Mr. Figueroa.

23   **E.    The ALJ Did Not Err by Failing to Consider Plaintiff's Combined**
24            **Impairments in Making an RFC Determination.**

25        Plaintiff contends that the ALJ failed to consider all of Plaintiff's combined
26   impairments in determining her RFC. Specifically, Plaintiff contends that the ALJ
27   failed to consider Plaintiff's nonexertional limitations stemming from her alleged
28   cardiac, gastric, and thyroid conditions, and the effect of Plaintiff's pain on her

15

concentration, persistence, and pace.  (JS at 27-29.)

A claimant's "residual functional capacity" is the most a claimant can still do despite her limitations.  Smolen, 80 F.3d at 1291 (citing 20 C.F.R. § 404.1545(a)).  An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. 20 C.F.R. § 404.1545(a)(2), (3), (e).

As stated above (see Discussion supra § III.B), the record does not support a finding that Plaintiff suffers from a cardiac or gastric condition that would result in significant nonexertional limitations.  Neither does the record establish any nonexertional limitations related to a thyroid condition, as the record merely reflects that Plaintiff was diagnosed with hypothyroidism and was placed on medications.  (AR at 305, 356, 359, 361, 373, 375, 377, 389, 396, 418, 420-22, 433, 529, 537.)   Also, there are only two notations in the record that could be construed as complaints by Plaintiff that her pain has impaired her concentration, persistence, or pace.  Significantly, these two complaints appear in the same Written Questions to Claimant (Adult) questionnaire.  (Id. at 135, 138.)  Plaintiff never complained of impaired concentration, persistence, and pace to any medical source, and no such source ever reported an independent finding that Plaintiff was so limited.

While the ALJ was required to consider all of Plaintiff's medically determined impairments in assessing her RFC, the record does not contain any support for a finding that Plaintiff suffered any limitations related to a cardiac, gastric, or thyroid condition, and did not support a finding that Plaintiff had impaired concentration, persistence, or pace.  Accordingly, the ALJ did not err in failing to include these alleged but unproven limitations in his RFC assessment, particularly where Plaintiff's subjective complaints of impairment had been properly rejected by the ALJ.

16

**F.      The ALJ Did Not Err by Relying on the VE's Testimony.**

Plaintiff contends that as a result of failing to consider Plaintiff's combined impairments in determining her RFC, as addressed above (see Discussion supra § III.E), the ALJ failed to present all of Plaintiff's limitations to the VE.  However, as the Court determined that the ALJ did not fail to consider Plaintiff's combined impairments, Plaintiff's related claim regarding the questioning of the VE necessarily fails.

### IV.

### ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: May 2, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge

17