1
2
3
O
4
5
6
7
8
9
UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10
11
| FILOMENA FIGUEROA, | ) | Case No. CV 12-06742-OP |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

The Court[2] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[3]

[1]  The Court substitutes Carolyn Colvin, Acting Commissioner of Social Security, as the defendant in this action pursuant to Rule 25(d) of the Federal Rules  Civil Procedure.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 11, 12.)

[3]  As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).  (ECF No. 9 at 3.)

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)   Whether the Administrative Law Judge ("ALJ") fully developed the record;

(2)   Whether the ALJ properly assessed Plaintiff's credibility;

(3)   Whether the ALJ properly considered lay witness testimony;

(4)   Whether the ALJ properly considered Plaintiff's combined impairments in making a Residual Functional Capacity ("RFC") assessment; and

(5)   Whether the ALJ erred in relying on the Vocational Expert's ("VE") testimony.

(JS at 3, 31.)[4]

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

---

[4]  In the listing of claims in the Joint Stipulation, both Claims Three and Five indicate a claim regarding the consideration of lay witness evidence. (JS at 3.)  However, it is clear from the body of the document that Claim Three pertains to lay witness evidence while Claim Five relates to VE testimony.  (Id. at 22-27, 31-34.)

1   evidence is "such relevant evidence as a reasonable mind might accept as adequate
2   to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The
3   Court must review the record as a whole and consider adverse as well as
4   supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).
5   Where evidence is susceptible of more than one rational interpretation, the
6   Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450,
7   1452 (9th Cir. 1984).

8                                    **III.**
9                                **DISCUSSION**
10  **A.    The ALJ's Findings.**
11          The ALJ found that Plaintiff has the severe impairments of grade 1
12  spondylolisthesis, degenerative disc disease, mild degenerative changes affecting
13  the lumbar spine, and status post left knee arthroscopic repair. (Administrative
14  Record ("AR") at 30.) The ALJ found that Plaintiff had the residual functional
15  capacity ("RFC") to perform light work with the following limitations: no
16  climbing ladders, ropes, and scaffolds; no stooping or crouching; and no
17  concentrated exposure to hazardous machinery, unprotected heights, and other
18  high risk, hazardous or unsafe conditions. (Id. at 30-31.) Relying on the
19  testimony of a vocational expert, the ALJ concluded that Plaintiff was not capable
20  of performing her past relevant work but could perform alternative work as a
21  sorter, inspector, and labeler. (Id. at 35-36.)

22  **B.    The ALJ Did Not Fail to Fully Develop the Record.**
23          Plaintiff contends that the ALJ failed to properly develop the record and
24  appears to argue that the ALJ should have subpoenaed additional records from
25  Long Beach Memorial Medical Center regarding the treatment of Plaintiff's
26  cardiac and gastric conditions. (JS at 3-6.)
27          Under the Commissioner's regulations, both the disability benefits claimant
28  and the Social Security Administration bear a regulatory responsibility for

                                      3

1   developing the evidentiary record.  The claimant must produce medical evidence

2   showing that the claimant has an impairment, and how severe that impairment is

3   during the time the claimant claims to be disabled.  See 20 C.F.R. §§ 404.1512(c)

4   (applicable to claims for disability benefits), 416.912(c) (applicable to claims for

5   SSI benefits).  In addition, the SSA must make every reasonable effort to help the

6   claimant get medical reports from the claimant's medical sources when the

7   claimant gives permission to request the reports.  See 20 C.F.R. §§ 404.1512(d),

8   416.912(d).

9       The ALJ has an independent duty to fully and fairly develop a record in

10  order to make a fair determination as to disability, even where the claimant is

11  represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.

12  2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

13  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Crane v. Shalala, 76 F.3d

14  251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.

15  1983)).  Ambiguous evidence, or the ALJ's own finding that the record is

16  inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty

17  to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing

18  Smolen, 80 F.3d at 1288).  That duty is heightened when the claimant is

19  unrepresented or is mentally ill and thus unable to protect his or her own interests.

20  Celaya, 332 F.3d at 1183; see also Tonapetyan, 242 F.3d at 1150; Crane, 76 F.3d

21  at 255.  However, it is the plaintiff's burden to prove disability.  Bayliss v.

22  Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) (quoting Meanel v. Apfel, 172

23  F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that

24  she is disabled")).

25      When the duty to develop the record is triggered, the ALJ can develop the

26  record by (1) making a reasonable attempt to obtain medical evidence from the

27  claimant's treating sources; (2) ordering a consultative examination when the

28  medical evidence is incomplete or unclear and undermines the ability to resolve

4

1    the disability issue; (3) subpoenaing or submitting questions to the claimant's

2    physicians; (4) continuing the hearing; or (5) keeping the record open for more

3    supplementation.  Tonapetyan, 242 F.3d at 1150; 20 C.F.R. § 416.917.

4         Plaintiff identifies five instances in the ALJ's opinion where the ALJ

5    concluded that the record did not support Plaintiff's contentions.  Plaintiff argues

6    that these findings by the ALJ amount to a finding that the record was inadequate.

7    (JS at 5-6.)  The record supports Plaintiff's assertion that the ALJ found that the

8    record did not support Plaintiff's contentions.  (AR at 31-34.)  However, the ALJ's

9    finding that the record does not contain evidence to support Plaintiff's contentions

10   is not equivalent to a finding that the record needs further development.  Rather,

11   the lack of evidence is proof that Plaintiff's contentions lack merit.  Were the

12   Court to find to the contrary, an ALJ would fail to fulfill his duty to develop the

13   record every time a claimant's allegations are unsupported by the record.  Of

14   course, an ALJ has no duty to find evidence where no such evidence exists.

15        This is particularly true where, as here, Plaintiff fails to identify any

16   additional supportive evidence that the ALJ should have obtained.  In fact,

17   Plaintiff failed to satisfy her initial burden of producing medical evidence showing

18   that she has a material cardiac or gastric condition.  See 20 C.F.R. §§ 404.1512(c),

19   416.912(c).  The only evidence produced by Plaintiff regarding her alleged cardiac

20   condition were discharge instructions indicating that she was treated for some

21   unidentified cardiac condition.  (AR at 527-29.)  Plaintiff has not provided any

22   proof that follow-up care was required or that she continued to suffer any

23   impairments as a result of this alleged cardiac condition.  Similarly, the record

24   contains an After Visit Summary regarding Plaintiff's treatment for a gastric

25   condition.  However, that summary indicates that the condition was acute and that

26   she need not return for followup for two months.  (Id. at 536.)  These minimal

27   records do not support a finding that Plaintiff exhibited a disabling cardiac or

28   gastric condition and were insufficient to put the ALJ on notice that the record was

5

1    insufficient to adjudicate Plaintiff's claims.

2        Plaintiff simply has failed to prove that the record was ambiguous or that

3    the ALJ found that the record was inadequate to allow for proper evaluation of the

4    evidence.  Accordingly, Plaintiff has failed to establish that the ALJ's duty to

5    develop the record was triggered.  Thus, there was no error.

6    **C.    The ALJ's Consideration of Plaintiff's Credibility.**

7        Plaintiff contends that the ALJ improperly rejected her subjective

8    complaints of impairment.  (JS at 9-17, 20-22.)  The Court does not agree.

9        In his decision, the ALJ incorporated by reference the credibility

10   determination contained in the previous ALJ's decision denying benefits.[5]  (AR at

11   31.)  In that prior opinion, the ALJ rejected Plaintiff's credibility as follows:

12           The claimant testified that she has back pain, left knee pain, joint

13       pain, her foot gives way.  Medications make her sleepy.  The claimant

14       only takes nonprescription ibuprofen for pain but said she also takes

15       medications she obtains in Mexico, which she reported provides one

16       month of relief.  The claimant further testified that she can only sit less

17       than 30 minutes, lift less than 10 pounds, stand only a little bit, she

18       cannot bend, she spends the day sitting and lying down, cooks if she can

19       take her time and rest in between, and back support improves her

20       comfort but could not do any work 8 hours a day.

21           The claimant still drives, however, she can perform personal

22       grooming and hygiene, she can go to her medical appointments, she can

23   _____

24       [5]  On October 26, 2007, an ALJ denied Plaintiff's application for benefits in

25   a written decision.  (AR at 52-59.)  On April 6, 2009, the Appeals Council vacated
     the ALJ decision and remanded the action for the resolution of the Step Five

26   analysis, specifically ordering further consideration of the vocational assessments

27   as compared to Plaintiff's RFC.  (Id. at 454-55.)  On February 17, 2010, the ALJ

28   issued the instant written decision denying Plaintiff's application for benefits.

6

cook and do laundry, and she can go to the grocery store and post office without assistance.  While the claimant does not have to be utterly incapacitated in order to be found disabled, her activities of daily living, although somewhat limited, nevertheless are not consistent with allegations of disabling pain.

August, September and October 2006 physical therapy notes indicate that, more than a month after the claimant's surgery, although massage and lying on her left side alleviated pain, her pain nonetheless was improving, her gait was normal, and she was weaning herself off the use of crutches to ambulate.  Further, the August 29, 2006 physical therapy note reported a generally normal exam, aside from some low back pain produced by an otherwise negative straight leg raising test – again, this was only less than 2 months after knee surgery.  This evidence does not support the claimant's allegations of disabling pain.

The record indicates that the claimant declined cortisone injections, which indicates that her pain is not as severe as alleged.  The claimant's doctor recommends limiting the back support and doing strengthening exercises, contrary to what she is doing, which indicates some treatment noncompliance that tends to lessen her credibility.

While the claimant['s] complaint of left sided radiculopathy, and treating workers' compensation orthopedic surgeon Dr. Thomas J. Grogan diagnosed lumbar spine radiculopathy, there was no evidence of radiculopathy on testing in January and August 2005 electromyograms. Further, no functional problems were noted during the face-to-face application interviews.  This evidence also tends to lessen the credibility of the claimant's allegations of disabling pain.

The claimant has a pristine earnings record, which shows a motivation to work that actually tends to enhance her credibility.  After

7

considering the evidence now of record, however, the Administrative
Law Judge finds . . . that the claimant's underlying medically
determinable impairments could reasonably be expected to produce
some of the alleged symptoms, but that the statements concerning the
intensity, persistence and limiting effects of these symptoms are not
entirely credible.

(Id. at 54-55 (citation omitted).)

Once a claimant has presented medical evidence of an underlying
impairment that could reasonably be expected to cause the symptoms alleged, the
ALJ may only discredit the claimant's testimony regarding subjective pain by
providing specific, clear, and convincing reasons for doing so.  Lingenfelter v.
Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  An ALJ's credibility finding
must be properly supported by the record and sufficiently specific to ensure a
reviewing court that the ALJ did not arbitrarily reject a claimant's subjective
testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).

An ALJ may properly consider "testimony from physicians . . . concerning
the nature, severity, and effect of the symptoms of which [claimant] complains,"
and may properly rely on inconsistencies between claimant's testimony and
claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d
954, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he
nature, location, onset, duration, frequency, radiation, and intensity" of any pain or
other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage,
effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than
medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities";
"unexplained, or inadequately explained, failure to seek treatment or follow a
prescribed course of treatment"; and "ordinary techniques of credibility
evaluation," in assessing the credibility of the allegedly disabling subjective
symptoms.  Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20

8

1    C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

2    600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on

3    conflict between claimant's testimony of subjective complaints and objective

4    medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.

5    1998) (ALJ may properly rely on weak objective support, lack of treatment, daily

6    activities inconsistent with total disability, and helpful medication); Johnson v.

7    Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact

8    that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d

9    748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and

10   the lack of side effects from prescribed medication).

11        **1.    The ALJ's Incorporation of the Prior ALJ Decision.**

12        Plaintiff does not challenge the credibility findings made in the prior ALJ

13   decision.  Rather, Plaintiff argues that the prior decision is not material to the

14   current analysis because the Appeals Council vacated that prior decision when it

15   remanded the action to the ALJ for a new opinion.  (JS at 20-22.)  In drafting the

16   new opinion on remand, the ALJ incorporated portions of the previous analysis so

17   as to avoid having to redraft an identical analysis in the new opinion.  Nothing

18   about the incorporation of the prior analysis is inconsistent with the Appeals

19   Council's order for a new opinion.  See Pitts v. Astrue, No. EDCV 11-230-OP,

20   2011 WL 5520319, *5 (C.D. Cal. Nov. 10, 2011) (ALJ's decision on remand

21   incorporated portions of prior decision).  Importantly, as detailed below, the

22   incorporated portion of the prior ALJ opinion provided sufficient reasoning for

23   rejecting Plaintiff's credibility.

24        First, the ALJ rejected Plaintiff's credibility because her reported activities

25   of daily living were inconsistent with her alleged disability.  (AR at 55.)  Daily

26   activities may be grounds for an adverse credibility finding "if a claimant is able to

27   spend a substantial part of his day engaged in pursuits involving the performance

28   of physical functions that are transferable to a work setting."  Fair v. Bowen, 885

9

1  F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th
2  Cir. 2005) (adverse credibility finding based on daily activities may be proper "if a
3  claimant engaged in numerous daily activities involving skills that could be
4  transferred to the workplace").  Plaintiff admitted during the hearing and through
5  forms related to her disability application that she could drive, cook, bathe, run
6  light errands, attend medical appointments, socialize, and complete light
7  housework.  (AR at 132, 163-64, 166, 547, 557.)  The ability to maintain such a
8  high level of daily activities is inconsistent with Plaintiff's allegations of total
9  disability.  As a result, this was a clear and convincing reason for rejecting
10  Plaintiff's credibility.  See Thomas, 278 F.3d at 958-59 (inconsistency between
11  claimant's testimony and claimant's conduct supported rejection of the claimant's
12  credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)
13  (inconsistencies between claimant's testimony and actions cited as clear and
14  convincing reason for rejecting the claimant's testimony).

15      Next, the ALJ discounted Plaintiff's allegations that her knee impairment
16  contributes to her total disability.  (AR at 55.)  While Plaintiff continues to allege
17  disability in part due to a left knee impairment (id. at 496), the medical record
18  shows a successful recovery from knee surgery.  (Id. at 377, 389, 396, 401.)  Of
19  course, an ALJ "may not reject a claimant's subjective complaints based *solely* on
20  a lack of objective medical evidence to fully corroborate the alleged severity of
21  pain."  Bunnell, 947 F.2d at 345 (emphasis added).  However, such a factor
22  remains relevant.  Burch, 400 F.3d at 680-81 (ALJ may properly rely on
23  inconsistency between claimant's subjective complaints and objective medical
24  findings); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between
25  claimant's testimony of subjective complaints and objective medical evidence in
26  the record).  Here, the ALJ did not rely solely on the lack of medical evidence
27  supporting Plaintiff's complaints of an ongoing knee impairment in rejecting her
28  credibility.  Accordingly, this too was a clear and convincing reason for rejecting

1   Plaintiff's credibility.

2          The ALJ also discounted Plaintiff's subjective complaints of impairment for
3   the clear and convincing reason that Plaintiff did not fully comply with treatment
4   recommendations.  (AR at 55.)  A relevant factor in determining a claimant's
5   credibility is an "'unexplained, or inadequately explained, failure to seek treatment
6   or follow a prescribed course of treatment.'"  Bunnell, 947 F.2d at 346 (quoting
7   Fair, 885 F.2d at 603.  A treatment note from February 2005 indicates that Plaintiff
8   refused cortisone injections for her back and knee pain due to a negative
9   experience in the past.  (AR at 178, 426.)  The same treatment note recommended
10  that Plaintiff continue her home exercise program, resume as many regular
11  activities as possible, and reduce the use of her lumbosacral mechanical support to
12  avoid weakening of her core muscles.  (Id. at 178, 426.)  Nevertheless, as is
13  apparent from Plaintiff's reports of limited physical activity, Plaintiff has not been
14  compliant with these recommendations for improving her muscle strength and
15  endurance.

16         The ALJ further noted that although Dr. Grogan diagnosed lumbar spine
17  radiculopathy, such a diagnosis was not supported by the objective medical
18  evidence.  (Id. at 55.)  Again, the lack of objective medical evidence is a relevant
19  factor in assessing a claimant's subjective complaints, but cannot act as the sole
20  basis for rejecting the subjective complaints of impairment.  Bunnell, 947 F.3d at
21  345 (ALJ may not reject claimant's credibility based solely on a lack of objective
22  medical evidence); Burch, 400 F.3d at 680-81 (ALJ may properly rely on
23  inconsistency between claimant's subjective complaints and objective medical
24  findings); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between
25  claimant's testimony of subjective complaints and objective medical evidence in
26  the record).  Here, Plaintiff's workers' compensation physicians noted a diagnosis
27  of radiculopathy multiple times during Plaintiff's evaluations and treatment.  (AR
28  at 242, 244, 270, 272, 324, 435.)  However, there is not a single objective finding

1  in the record to support the diagnosis of radiculopathy.  A January 2004 x-ray of
2  Plaintiff's lumbar spine resulted in only a question of an L5 spondylolysis on the
3  lateral view.  (Id. at 211.)  A March 2004 MRI of the lumbar spine was
4  unremarkable.  (Id. at 206.)  A January 2005 electromyogram resulted in normal
5  findings.  (Id. at 184.)  A February 2005 x-ray of the lumbosacral spine was
6  negative.  (Id. at 236.)  A May 2005 MRI indicated spondylolisthesis, disc
7  desiccation and bulge, mild spinal canal narrowing, and mild bilateral
8  neuroforaminal encroachment, but did not indicate a finding of radiculopathy.  (Id.
9  at 258-59.)  Finally, an August 2005 physician report notes that an
10  electrodiagnostic study had not revealed any evidence of lumbar radiculopathy or
11  peripheral neuropathy.  (Id. at 343.)  The lack of objective evidence confirming
12  radiculopathy is yet another clear and convincing reason for rejecting Plaintiff's
13  subjective complaints of impairment.

14        **2.    The ALJ's New Credibility Analysis.**

15        Significantly, the ALJ updated his credibility findings in the current written
16  decision, citing the same factors discussed above in addition to the following
17  factors:  (1) there is no evidence in the record to support Plaintiff's alleged
18  disabling cardiac, gastric, and psychiatric conditions (id. at 31, 32); (2) there is no
19  documentation of complaints of stress or headache to support Plaintiff's
20  complaints of such impairments (id. at 32); (3) Plaintiff's conservative regimen of
21  pain medications and sporadic treatment records undermines her complaints of
22  constant debilitating pain (id. at 32-33); and (4) there is no objective medical
23  evidence of an impairment related to Plaintiff's wrist, hand, or neck that could
24  reasonably produce the subjective symptoms alleged by Plaintiff (id. at 33).  As
25  discussed below, these factors provide additional clear and convincing reasons for
26  rejecting Plaintiff's credibility.

27        As discussed above (see Discussion supra § III.B), the evidence did not
28  support a finding that Plaintiff suffered from a disabling cardiac or gastric

condition.  Neither does the record support a disabling psychiatric condition, as the record only makes passing references to depression and the administration of Prozac.  (Id. at 135, 138, 195, 336, 355, 356-57.)  Similarly, there are no records suggesting that Plaintiff suffered from an ongoing problem with stress or headaches.  On August 4, 2005, Plaintiff made a subjective complaint of "frequent pain-related headaches."  (Id. at 323.)  However, less than five months prior, Plaintiff reported that she did not suffer from frequent headaches.  (Id. at 336.)  Plaintiff also mentioned experiencing stress only in passing.  (Id. at 138.)  In addition, despite Plaintiff's complaints of hand, wrist, and neck impairments, there is no objective evidence to support any type of limitations in this regard.  In fact, January 2007 x-rays of Plaintiff's cervical spine, hand, and wrist were normal.  (Id. at 361-62.)  Again, the lack of objective medical evidence to support Plaintiff's complaints of impairment was a clear and convincing reason to reject her credibility.  Burch, 400 F.3d at 680-81 (ALJ may properly rely on inconsistency between claimant's subjective complaints and objective medical findings); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record).

Finally, to the extent that Plaintiff has been treated for any physical conditions, she has maintained a conservative medication history.  Plaintiff has obtained relief mostly through the use of ibuprofen and Flexeril, and was only prescribed narcotic pain medication immediately following her knee surgery.  (Id. at 177, 182, 186, 193, 243, 305, 356, 358, 359, 361, 363, 364, 367, 369, 370-71, 373, 376, 378, 380, 382, 383, 386-87, 389-90, 392, 394, 396, 399, 402, 404, 415, 417, 418, 424-26, 529.)  This too was a clear and convincing reason for rejecting Plaintiff's credibility.  Johnson, 60 F.3d at 1434 (ALJ may properly rely on the fact that only conservative treatment had been prescribed).

Ultimately, the lack of objective medical evidence supporting Plaintiff's

13

1    alleged impairments, her conservative treatment, her noncompliance with

2    suggested treatment, and her significant activities of daily living amounted to clear

3    and convincing reasons for rejecting her credibility.  Burch, 400 F.3d at 680-81

4    (ALJ may properly rely on inconsistency between claimant's subjective

5    complaints and objective medical findings); Morgan, 169 F.3d at 600 (ALJ may

6    properly rely on conflict between claimant's testimony of subjective complaints

7    and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (ALJ may

8    properly rely on weak objective support, lack of treatment, daily activities

9    inconsistent with total disability, and helpful medication).

10        Based on the foregoing, the Court finds the ALJ's credibility finding was

11   supported by substantial evidence and was sufficiently specific to permit the Court

12   to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

13   testimony.  Thus, there was no error.

14   **D.    The ALJ Properly Considered the Lay Witness Testimony.**

15        Plaintiff claims that the ALJ failed to properly consider the testimony of her

16   husband, Jose Figueroa.  (JS at 22-23, 25-27.)  The Court does not agree.

17        Mr. Figueroa testified that Plaintiff is "very injured."  (AR at 581.)

18   Specifically, Mr. Figueroa testified that Plaintiff suffers from numbness in her

19   hands, pain in her neck and back, swelling in her hands and arms, and difficulty

20   sleeping.  (Id. at 581-82.)  According to Mr. Figueroa, Plaintiff cannot sit long and

21   has trouble walking.  (Id. at 583.)  Mr. Figueroa has to assist Plaintiff with the

22   shopping.  (Id..)  The ALJ rejected Mr. Figueroa's testimony, finding:

23            At the hearing, the claimant and her husband alleged an inability to

24            perform most daily activities with the husband having to assume all

25            of the household chores (hearing testimony).  However, the objective

26            medical record does not show findings, which would support the

27            degree of limitation alleged.

28   (Id. at 33.)

1    Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to
2    medical evidence, the Commissioner "may also use evidence from other sources to
3    show the severity of [an individual's] impairment(s) and how it affects [her]
4    ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by
5    friends and family members in a position to observe a claimant's symptoms and
6    daily activities have routinely been treated as competent evidence." Sprague v.
7    Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). If the ALJ chooses to reject such
8    evidence from "other sources," he may not do so without comment. Nguyen v.
9    Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must provide "reasons that
10   are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.
11   1993). One of the reasons deemed to be "germane" to a particular witness
12   includes that the witness's testimony is contradicted by the medical evidence of
13   record. See Bayliss, 427 F. 3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th
14   Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it
15   conflicts with medical evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d
16   1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that
17   conflicted with the available medical evidence.").

18       Here, the ALJ acknowledged Mr. Figueroa's testimony and rejected it on
19   the basis of reasons that were germane to the witness. The Court does not
20   consider the persuasiveness of the ALJ's reasons for rejecting Mr. Figueroa's
21   testimony. Thus, the ALJ fulfilled his duty to consider the evidence and provided
22   sufficient reason for rejecting the third party evidence of Mr. Figueroa.

23   **E.    The ALJ Did Not Err by Failing to Consider Plaintiff's Combined**
24   **Impairments in Making an RFC Determination.**

25       Plaintiff contends that the ALJ failed to consider all of Plaintiff's combined
26   impairments in determining her RFC. Specifically, Plaintiff contends that the ALJ
27   failed to consider Plaintiff's nonexertional limitations stemming from her alleged
28   cardiac, gastric, and thyroid conditions, and the effect of Plaintiff's pain on her

15

concentration, persistence, and pace.  (JS at 27-29.)

A claimant's "residual functional capacity" is the most a claimant can still do despite her limitations.  Smolen, 80 F.3d at 1291 (citing 20 C.F.R. § 404.1545(a)).  An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not.  20 C.F.R. § 404.1545(a)(2), (3), (e).

As stated above (see Discussion supra § III.B), the record does not support a finding that Plaintiff suffers from a cardiac or gastric condition that would result in significant nonexertional limitations.  Neither does the record establish any nonexertional limitations related to a thyroid condition, as the record merely reflects that Plaintiff was diagnosed with hypothyroidism and was placed on medications.  (AR at 305, 356, 359, 361, 373, 375, 377, 389, 396, 418, 420-22, 433, 529, 537.)   Also, there are only two notations in the record that could be construed as complaints by Plaintiff that her pain has impaired her concentration, persistence, or pace.  Significantly, these two complaints appear in the same Written Questions to Claimant (Adult) questionnaire.  (Id. at 135, 138.)  Plaintiff never complained of impaired concentration, persistence, and pace to any medical source, and no such source ever reported an independent finding that Plaintiff was so limited.

While the ALJ was required to consider all of Plaintiff's medically determined impairments in assessing her RFC, the record does not contain any support for a finding that Plaintiff suffered any limitations related to a cardiac, gastric, or thyroid condition, and did not support a finding that Plaintiff had impaired concentration, persistence, or pace.  Accordingly, the ALJ did not err in failing to include these alleged but unproven limitations in his RFC assessment, particularly where Plaintiff's subjective complaints of impairment had been properly rejected by the ALJ.

16

**F.     The ALJ Did Not Err by Relying on the VE's Testimony.**

Plaintiff contends that as a result of failing to consider Plaintiff's combined impairments in determining her RFC, as addressed above (see Discussion supra § III.E), the ALJ failed to present all of Plaintiff's limitations to the VE. However, as the Court determined that the ALJ did not fail to consider Plaintiff's combined impairments, Plaintiff's related claim regarding the questioning of the VE necessarily fails.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: May 2, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge

17